UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CHILDREN'S HEALTH DEFENSE**,<br><br>Plaintiff,<br><br>v.<br><br>**CENTERS FOR DISEASE CONTROL AND PREVENTION**,<br><br>Defendant. | Case No. 1:23-cv-00431 (TNM) |

## MEMORANDUM ORDER

Children's Health Defense (CHD) wants governmental safety-monitoring records for the COVID-19 vaccine. So it sent Freedom of Information Act requests to two agencies—the Food and Drug Administration and Centers for Disease Control and Prevention. The agencies largely gave CHD what it wanted, except for 512 documents bearing the results of safety analyses performed by FDA and related communications between FDA and CDC. Those documents, which are responsive to both FOIA requests, are sitting in an FDA processing queue that has ballooned because of an unprecedented discovery order from a federal court in Texas.

CHD sued both agencies to speed things up. But FDA obtained a stay in its litigation with CHD, citing exceptional circumstances and due diligence. *See* Order at 9, *Child.'s Health Def. v. FDA* (*CHD I*), No. 23-cv-220 (RDM) (D.D.C. Jan. 12, 2024), ECF No. 25. FDA got a stay in another case involving substantially similar documents. *See* Orders, *Informed Consent Action Network v. FDA* (*Informed Consent I*), No. 23-cv-219 (RBW) (D.D.C.), ECF Nos. 27 & 29. Now CDC—through its parent agency, the U.S. Department of Health and Human Services—seeks similar treatment for these same documents. In an exercise of its inherent

power, the Court will grant a stay to preserve the integrity of the stay orders in *CHD I* and *Informed Consent I*. CHD may not get fast-track treatment here after it and another plaintiff were ordered to wait elsewhere.

# I.

CHD sent two FOIA requests to CDC "seeking records in connection with the CDC's safety-monitoring of COVID-19 injections through the Vaccine Adverse Events Reporting System (VAERS)." Compl. at 1, ECF No. 1. Frustrated with the pace and substance of CDC's responses, CHD sued to move things along. *See id.* The parties have hashed out most of their differences, except for 512 potentially responsive records that CDC sent to FDA for consultation.[1] *See* HHS Mot. for Partial Stay at 10,[2] ECF No. 20. When FDA received the records, it placed them in a first-in, first-out processing queue at the Access Litigation and Freedom of Information Branch within FDA's Center for Biologics Evaluation and Research. *See id.* at 6. The agency slotted the documents into this queue last August, and they have been sitting there ever since behind hundreds of other, earlier-submitted FOIA requests. *See* Burk Decl. ¶¶ 32, 35, ECF No. 20-1.

These documents matter to CHD. It wants CDC and FDA records on data mining analyses that trace links between certain "safety signals" and the COVID-19 vaccine. Pl.'s Opp'n at 12, ECF No. 24. CDC performed its analysis using a proportional reporting ratio (PRR) methodology. *See* Burk Decl. ¶ 33. And FDA used an empirical Bayesian (EB) methodology. *See id.* CHD's FOIA request to CDC seeks information and communication

---

[1] CHD also appears unsatisfied with the CDC's searches and the extent of their redactions. *See* HHS Mot. at 10–11; Joint Status Report ¶¶ 3, 9, 10, ECF No. 17. But these issues are for another day.

[2] The Court's page citations refer to the pagination automatically generated by CM/ECF.

about both forms of analysis.  *See* Compl. ¶ 17.  It specifically asks for "[r]ecords of all communication about PRR results and all follow-up investigation done . . . within CDC, and all communications about these matters between CDC and FDA."  *Id.*  And it more broadly requests "[r]ecords of all communications discussing, referencing, or mentioning Proportional Reporting Ratio, PRR (or PRRs), safety signals (or signals), signal detection, or data mining, . . . within CDC and between CDC and FDA."  *Id.*

The 512 documents could be responsive to CHD's requests.  According to a senior FDA official, they contain "FDA's EB analyses that FDA shared with CDC, including copies of FDA's EB analyses, along with communications between FDA and CDC about the results of those analyses."  Burk Decl. ¶ 33.  Though CDC possessed these records, they originated from FDA.  So rather than reviewing and producing the records itself, CDC referred the records to FDA for a consultation.  This allows FDA to review the documents (redacting and flagging them for withholding as necessary) before CDC produces them.  *See id.* ¶ 32.

But the consultation process hit a snag when a federal court in Texas ordered the FDA to process 5.7 million pages of COVID-19 vaccine records in a compressed timeframe.  *See* Order at 3, *Pub. Health & Med. Pros. for Transparency v. FDA* (*PHMPT I*), No. 4:21-cv-1058 (MTP) (N.D. Tex.), ECF No. 35; Order at 1, *Pub. Health & Med. Pros. for Transparency v. FDA* (*PHMPT II*), No. 4:22-cv-0915 (MTP) (N.D. Tex.), ECF No. 38.  Last fall, FDA completed its production obligations in *PHMPT I*.  *See* Burk Decl. ¶ 22.  But the agency's production efforts in *PHMPT II* have only just begun.  It must process roughly 4.5 million records at a minimum rate of 180,00 pages per month until June 2025.  *See id.* ¶ 24.

The processing burden created by the *PHMPT* litigation is—without dispute—"many orders of magnitude greater than anything any agency has ever encountered in a FOIA order."

3

*Id.* ¶ 25. FDA responded by "implement[ing] sweeping organizational and work process changes." *Id.* ¶ 23. It assigned nine full-time employees to *PHMPT* processing and hired nine full-time contractors (and one part-time contractor) to aid in the effort. *Id.* It also hired six new full-time employees since the *PHMPT* orders came down, although it will take several months of training for the new hires to become maximally efficient. *Id.* ¶¶ 25, 27. Because of the intense production schedule in the *PHMPT* litigation, FDA has only been able to spare a "handful of staff" for the rest of the FOIA requests—including the requests here. *Id.* ¶ 25.

Given these circumstances, FDA "has reviewed every pending FOIA request that is the subject of litigation to determine whether the case should be stayed to enable [the agency] to satisfy its production mandates." *Id.* ¶ 28. Based on this review, either the FDA or its parent agency HHS have sought stays in six cases (not counting this one). In one case, the plaintiff voluntarily dismissed its complaint after the agency asked for a stay. *See* Stip. of Dismissal, *Informed Consent Action Network v. FDA*, No. 23-cv-1508 (CKK) (D.D.C.), ECF No. 15. The stay motion in another case remains pending. *See* Defs.' Mot. to Stay, *Informed Consent Action Network v. FDA*, 23-cv-3675 (JMC) (D.D.C.), ECF No. 13. And the stay requests in the other four cases have all been granted. *See* Order, *Wright v. HHS*, No. 22-cv-1378 (RC) (D.D.C.), ECF No. 28 (18-month stay); Orders, *Informed Consent I*, No. 23-cv-219, ECF Nos. 27 & 29 (two six-month stays); Minute Order (Dec. 13, 2023), *Child.'s Health Def. v. FDA*, No. 23-cv-2316 (LLA) (D.D.C.) (18-month stay); Mem. Op. & Order, *CHD I*, No. 23-cv-220, ECF No. 25 (six-month stay).

Two of those cases—*CHD I* and *Informed Consent I*—directly overlap with this one. The 512 documents contain FDA's empirical Bayesian analyses and communications with CDC about the results of those analyses. *See* Burk Decl. ¶ 33. That makes the records potentially

4

responsive to the FOIA request here.  *See* Compl. ¶ 17.  But they also relate to requests in *CHD I* and *Informed Consent I*.  Burk Decl. ¶ 34.

The overlap is hard to miss.  In *CHD I*, CHD asks for "[r]ecords of any Empirical Bayesian data mining conducted by FDA . . . and any records of any sharing or discussing of results and signals with the CDC."  Compl. ¶ 16, *CHD I*, No. 23-cv-220, ECF No. 1.  And in *Informed Consent I*, the plaintiff seeks "records concerning 'Empirical Bayesian data mining' and . . . any communications between FDA and CDC 'sharing and discussing results of data mining analyses and signals.'"  Compl. ¶ 5, *Informed Consent I*, No. 23-cv-219, ECF No. 1.  Based on the wording of these requests, a senior FDA official swears under penalty of perjury that, "[t]o the best of [her] knowledge, the Consult comprises a subset of similar records of FDA's EB analysis that [she] believe[s] will be responsive to both of the FOIA requests" in *CHD I* and *Informed Consent I*.  Burk Decl. ¶ 34.

Both cases are stayed.  In *CHD I*, the court entered a six-month *Open America* stay beginning on January 12, 2024.  *See* Mem. Op. & Order, *CHD I*, No. 23-cv-220, ECF No. 25.  And the court recently ordered the parties there to file status reports in August addressing whether the stay should be extended or modified.  *See* Minute Entry (July 9, 2024), *CHD I*, No. 23-cv-220.  Similarly, the *Informed Consent I* court entered an *Open America* stay last November.  *See* Order, *Informed Consent I*, No. 23-cv-219, ECF No. 27.  And in May, the court extended that stay until November 2024.  *See* Order, *Informed Consent I*, No. 23-cv-219, ECF No. 29.

HHS now seeks an 18-month stay here.  *See* HHS Mot. at 6.  It says a stay is warranted under either 5 U.S.C. § 552(a)(6)(C)(i) (which codified the "exceptional circumstances" stay first recognized in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir.

5

1976)), or *Landis v. North American Co.*, 299 U.S. 248 (1936).  CHD opposes the Motion, *see* Pl.'s Opp'n at 11, which is now ripe for adjudication.

## II.

Consider first CHD's threshold argument that HHS cannot move for a stay because of its status as a nonparty.  *See* Pl.'s Opp'n at 20–22.  CHD says this suit is between CHD and CDC, and it notes that CDC has not sought a stay.  *See id.* at 20.  According to CHD, this means the Court should either strike or deny HHS's motion.  *See id.* at 22.

CHD is half right.  Typically only parties may seek relief from a court.  *Cf. Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 990 (D.C. Cir. 2023).  But there are various ways an outsider can become a party: "intervention, substitution, or third-party practice," to name a few.  *United States v. LTV Corp.*, 746 F.2d 51, 53 (D.C. Cir. 1984) (per curiam).  "Movants in trial proceedings have also historically been considered 'parties' by the Supreme Court" in the context of appealing "collateral orders to which they were parties, even though they were not named parties to . . . the underlying judgments."  *Broidy*, 61 F.4th at 990 (cleaned up).  No matter the mechanism, CHD has a point—HHS must become a party to seek relief.

HHS says it *is* a party by operation of law.  Specifically, it says that FOIA automatically makes an executive department a defendant whenever one of its components is sued.  *See* HHS Mot. at 1 n.1; HHS Reply at 5–7, ECF No. 25.  Not so.

FOIA provides that "each *agency* . . . shall make [properly requested] records promptly available to any person."  5 U.S.C. § 552(a)(3)(A) (emphasis added).  Two overlapping definitions apply to the term "agency" as it appears in that subsection.  The term generally "means *each authority* of the Government of the United States, whether or not it is within or subject to review by another agency."  *Id.* § 551(1) (emphasis added).  And for § 552

specifically, FOIA says that the term "'agency' as defined in section 551(1) . . . includes any *executive department*, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *Id.* § 552(f)(1) (emphasis added).

Stitched together, § 551(1) generally defines "agency" and § 552(f)(1) lists some specific entities that fit that bill.  But the word "includes" tees off that list, making its examples illustrative instead of exclusive.  *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012) ("The verb *to include* introduces examples, not an exhaustive list.").  So FOIA's agency language *may* refer to an "executive department" (like HHS).  5 U.S.C. § 552(f)(1).  Yet it *may also* refer to an "authority of the Government of the United States, whether or not it is within or subject to review by another agency" (like CDC).  *Id.* § 551(1).  Either way, FOIA's double-layer definition of "agency" does not—as HHS suggests—make an "executive department" a de facto *party* in every suit against its components.  *Id.* § 552(f)(1).

Precedent confirms that "subcomponents of federal executive departments may, at least in some cases, be properly named as FOIA defendants" even if their parent agency is left out of the action.  *See Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 101 (D.D.C. 2012) (cleaned up).  And the D.C. Circuit has said that "agency status [is conferred on] any administrative unit with substantial independent authority in the exercise of specific functions." *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971).  So based on text and precedent, HHS did not automatically become a party when CHD sued CDC.

That said, the Court will recognize HHS as an intervenor for the limited purpose of seeking a stay. Rightly or wrongly, HHS has acted like a party from the beginning of this litigation. In the Complaint, CHD alleged that CDC was "an agency within the executive branch of the U.S. Government, . . . is a federal agency within the meaning of 5 U.S.C. § 552(f), and has possession, custody, and control of records to which Plaintiff seeks access." Compl. ¶ 3. But CDC denied the allegation and answered that "CDC is an operating component within [HHS]," meaning "[HHS] is the proper defendant to this Complaint." Answer ¶ 3, ECF No. 11. HHS has also filed joint status reports and joint motions with CHD—all without objection. *See, e.g.*, JSR at 1, ECF No. 12 ("Plaintiff Children's Health Defense ("Plaintiff"), and Defendant, the Department of Health and Human Services ("Defendant" and, together with Plaintiff, "Parties"), through undersigned counsel respectfully submit the following joint status report[.]"); JSR at 1, ECF No. 13 (same); Joint Mot. Extension at 1, ECF No. 16 (same). And, of course, CDC operates under the HHS umbrella. *See* HHS Mot. at 1. Even CDC's letterhead in correspondence with CHD has "Department of Health and Human Services" stamped across the top. *See* HHS Reply Ex. 2, at 1, ECF No. 25-2. So from the get-go, HHS has functionally participated here.

HHS also qualifies for permissive agency intervention under Federal Rule of Civil Procedure 24(b). That rule says: "On timely motion, the court may permit a federal . . . agency to intervene if a party's claim or defense is based on . . . a statute or executive order administered by the . . . agency." Fed. R. Civ. P. 24(b)(2)(A). HHS meets that standard.

As for the "timely motion" requirement, the Court recognizes that HHS never filed a formal motion seeking intervention. But HHS has plainly demonstrated its desire to participate here. So rather than requiring HHS and CHD to engage in "superfluous motion practice," HHS

8

Reply at 6, the Court will construe HHS's stay motion as a request to intervene on that narrow issue. *Cf. In re Sealed Case (Med. Recs.)*, 381 F.3d 1205, 1211 n.4 (D.C. Cir. 2004) (noting that several "courts of appeals have construed a district court's decision to permit a non-party to participate in a discovery dispute as the equivalent of authorizing intervention" (cleaned up)). Other circuits have endorsed this practice, which permits a district court to rule on a motion filed by a nonparty "as if [that nonparty] had filed a formal motion to intervene." *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1341 (11th Cir. 1999); *accord Carhart v. Carhart-Halaska Int'l, LLC*, 788 F.3d 687, 690 (7th Cir. 2015) (affirming decision to permit intervention "without insisting on the formality of a motion to intervene"); *Farina v. Mission Inv. Tr.*, 615 F.2d 1068, 1074 (5th Cir. 1980) (rejecting argument "that the FDIC never made a formal petition to intervene").

As for Rule 24(b)'s substantive requirement, CHD brought two improper withholding claims under FOIA, Compl. ¶ 4, a statute governing HHS and its components, *see* 5 U.S.C. § 552(a)(3)(A) (requiring covered agencies to make properly requested "records promptly available to any person"). And critically, HHS is administering FOIA in the context of *this litigation* by brokering the uniform application of privileges and exemptions across its components, CDC and FDA. So HHS may intervene, but—absent a formal intervention motion—the Court will limit HHS's participation to this stay motion. *Broidy*, 61 F.4th at 995–96. Finally, the reasons favoring intervention outweigh the risk of "undu[e] delay or prejudice" to CHD or CDC. Fed. R. Civ. P. 24(b)(3); *see also infra* Part III (explaining basis for stay).[3]

---

[3] HHS need not independently demonstrate Article III standing as a Defendant-Intervenor because it is not "invoking the court's jurisdiction" or "seeking additional relief" beyond the claims asserted by CHD. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019); *accord Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (stating appellate court "erred by inquiring into [the intervenor's] independent Article III standing"); *Env't Integrity Project v. Wheeler*, No. 20-cv-1734 (KBJ), 2021 WL

In sum, the Court treats HHS as a Defendant-Intervenor for the purpose of considering its stay motion.

### III.

Now to address the merits of the stay motion. HHS offers two paths to pausing this case: one under 5 U.S.C. § 552(a)(6)(C)(i), and another under *Landis v. North American Co.*, 299 U.S. 248 (1936). At this point, with stays issued in both *CHD I* and *Informed Consent I*, *Landis* offers the better course.

A so-called *Landis* stay stems "from the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. at 254. Time and again, the Supreme Court has recognized that a district court may exercise its "sound discretion" to "hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and issues are the same." *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937); *accord Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . the general principle is to avoid duplicative litigation.").

That principle fits these circumstances like a glove. Two courts in this district have required plaintiffs—who seek the *same documents* CHD seeks here—to wait their turn. *See* Mem. Op. & Order, *CHD I*, No. 23-cv-220, ECF No. 25; Orders, *Informed Consent I*, No. 23-cv-219, ECF Nos. 27 & 29. Like a child denied by one parent who decides to ask the other, CHD seeks relief here that was withheld by another judge of this district. Letting CHD skip the line would trigger a host of problems. Most prominently, an order like that would directly "interfere[] with []other case[s]"—cases involving the *same documents* and, for one of the cases,

---

6844257, at *2 (D.D.C. Jan. 27, 2021) ("[T]he D.C. Circuit's prior holdings" on intervenor standing "predate, and are plainly inconsistent with, the Supreme Court's recent opinions.").

10

the *same plaintiff*. *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971). The risk of blatant interference alone constitutes a "strong consideration for [a] stay." *Id.* Greenlighting immediate access would also vitiate CDC's prerogative to consult another agency whose documents happen to be in CDC's possession but are responsive to CHD's FOIA request. *See* 5 U.S.C. § 552(a)(6)(B)(iii)(III). And forcing FDA to move 512 documents to the head of the line would encourage every well-heeled FOIA requester to litigate for a fast pass, all to the detriment of every other requester in the queue. *Cf.* Order at 3, *PHMPT I*, No. 4:21-cv-1058, ECF No. 35; Order at 1, *PHMPT II*, No. 4:22-cv-0915, ECF No. 38.

Of course, the Court must balance its interest in judicial economy and the preservation of the related stay orders against "any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (cleaned up). But one party will face some hardship either way the Court rules. If the Court grants a stay, CHD will not have immediate access to "crucial information about federal public health agencies' efforts to determine whether and to what extent COVID-19 shots are causally linked to" adverse events. Pl.'s Opp'n at 28–29. If the Court denies a stay, CDC's counterpart FDA may be forced to violate a court-mandated processing order given the reality of its limited resources. HHS Mot. at 22–23. And the lack of a stay would impede HHS's ability to coordinate and uniformly invoke privileges and exemptions across its components.

CHD counters that a stay of any sort would violate FOIA. It says that CDC has a statutory obligation to produce the 512 records, and its failure to do so constitutes improper withholding that cannot continue. *See* Pl.'s Opp'n at 16–20. While CHD may be right on the law, *see McGehee v. C.I.A.*, 697 F.2d 1095, 1109 (D.C. Cir. 1983) (noting courts may compel records "improperly withheld"), it is wrong on its application.

Even if the records are being "withheld," a "standard of reasonableness" governs whether that withholding is "improper." *Id.* at 1110. CDC has taken reasonable measures to process the records. Indeed, FOIA expressly permits "consultation" "among two or more components of the agency having substantial subject-matter interest therein." 5 U.S.C. § 552(a)(6)(B)(iii)(III). And this consultation may extend FOIA's "time limits," *id.* § 552(a)(6)(B)(i), as long as the agency conducts the consult "with all practicable speed," *id.* § 552(a)(6)(B)(iii). Despite the anticipated length of the delay here, FDA cannot practically move any quicker unless it is loosed from its *PHMPT* constraints. So a stay will not violate FOIA.

Nor does FOIA's statutory scheme undercut the Court's inherent authority to issue a *Landis* stay. *See Campaign for Accountability v. U.S. Dep't of Justice*, 280 F. Supp. 3d 112, 115 (D.D.C. 2017). As the D.C. Circuit and Supreme Court recognized decades ago, "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974)).

To recap, several judges in this district have issued stays affecting access to the same documents CHD seeks here, and one of these cases even involves CHD. *See* Burk Decl. ¶¶ 33–34. This alone constitutes a "pressing need" for a stay. *Belize Soc. Dev.*, 668 F.3d at 732. The same reason justifying those stays—the extraordinary production deadline imposed on FDA by another court—applies here too.

## IV.

Having weighed the equities on both sides of the ledger, the Court will stay this case for six months from the date of this Order. At the end of this period, the Court will order the parties to appear for an in-person status conference. And if either of the stays in *CHD I* or *Informed*

*Consent I* are lifted, the parties may bring that development to the Court's attention in a joint status report. For these reasons, it is hereby

**ORDERED** that HHS's [20] Partial Motion to Stay is GRANTED IN PART; and it is further

**ORDERED** that this case is STAYED until Friday, January 24, 2025; and it is further

**ORDERED** that the parties shall appear for an in-person status conference on Friday, January 24, 2025, at 10:30 a.m. in Courtroom 2 to discuss whether the stay should be extended or lifted.

**SO ORDERED**.

The Clerk of Court is requested to add the U.S. Department of Health and Human Services to the docket as a Defendant-Intervenor.

Dated: July 24, 2024                                                         TREVOR N. McFADDEN, U.S.D.J.